MIA D. OBCIANA        8242
PETER G. SIACHOS (pro hac vice to be filed)
GORDON REES SCULLY MANSUKHANI LLP
500 Ala Moana Boulevard, Suite 7400
Honolulu, Hawaii 96813
Telephone:  (808) 441-1824
Facsimile:  (808) 464-6535
Email:  mobciana@grsm.com
         psiachos@grsm.com

Attorneys for Plaintiff
JTH TAX LLC d/b/a LIBERTY TAX SERVICE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE, <br><br> Plaintiff, <br><br> vs. <br><br> OWEN H. D'SOUZA, NORMA C. D'SOUZA, and PICASSO TRIGGER COMPANY LLC, <br><br> Defendants. | 1:20-CV-00087 <br><br> COMPLAINT |

## PLAINTIFF'S VERIFIED COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"), through its

undersigned counsel, alleges for its Verified Complaint against Defendants Owen

H. D'Souza ("Owen D'Souza"), Norma C. D'Souza ("Norma D'Souza"), and

Picasso Trigger Company LLC ("Picasso Trigger") (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1.     This is a civil action for preliminary and permanent injunctive relief and damages for infringement of federally registered trademarks, unfair competition, and breach of contract, among other causes of action.

2.     Defendants, who are former franchisees, hid revenue from which royalties are owed to Liberty to solicit customers using Liberty's trademarks, trade secrets, and goodwill, appearing to operate as a Liberty franchise while at the same time transmitting income tax returns using non-Liberty software, breaching in-term and post-term non-competition and non-solicitation covenants, retaining Liberty's confidential commercial information, using Liberty customer lists, underreporting revenue, and failing to pay royalties.

3.     Defendants, individually and in concert, are violating federal and state trademark and unfair competition laws through their deception to the public about the origin of the tax preparation services, specifically by luring customers into their tax preparation office under the guise that they will receive tax preparation services from Liberty, but then filing the returns outside Liberty systems.

4.     Liberty seeks an immediate injunction (1) enjoining Picasso Trigger from breaching post-termination non-competition and non-solicitation covenants,

(2) enjoining Defendants from using any of Liberty's confidential commercial information, (3) enjoining Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a franchise customer until September 5, 2021, two years after termination of a franchise agreement between Liberty and Picasso Trigger, and (4) compelling Defendants to secure possession of the former franchise office location for Liberty through a lease assignment or otherwise and/or to cease using that location to provide income tax preparation services.

## PARTIES

5.     Plaintiff Liberty is a Delaware limited liability company with its principal place of business in the Commonwealth of Virginia.

6.     Liberty was formerly a corporation known as JTH Tax, Inc., incorporated in Delaware, before it was converted to a limited liability company.

7.     Liberty and its affiliates maintain franchises and company-owned income tax preparation offices throughout the United States.

8.     Liberty's members, proceeding up the membership chart to individuals and an incorporated entity, consist of individuals who are citizens of the States of Colorado, Connecticut, Florida, Illinois, New Hampshire, New York, and Texas and the Commonwealths of Massachusetts and Pennsylvania, and the Franchise Group,

Inc., a Delaware corporation with its principal place of business in the Commonwealth of Virginia.

9.     Defendant Owen D'Souza is a citizen of the State of Hawaii who resides in Maui County, Hawaii, within the District of Hawaii.

10.     Defendant Norma D'Souza is a citizen of the State of Hawaii who resides in Maui County, Hawaii, within the District of Hawaii.

11.     Defendant Picasso Trigger is a limited liability company organized and existing under the laws of the State of Hawaii.

12.     Owen D'Souza and Norma D'Souza are the Members of the Picasso Trigger limited liability company.

13.     Upon information and belief, Defendants are operating competing income tax preparation businesses at 270 Lahainaluna Road, Lahaina, HI 96761, which is the address of a former Liberty Tax Service® tax preparation franchise operated by Defendants, at 2911 Kailiili Road, Haiku, HI 96708, which is Picasso Trigger's principal place of business, and 62 N Market Street, Suite 300, Wailuku, HI 96793.

## JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over Defendants in that Owen D'Souza and Norma D'Souza are natural persons who are residents of the State of

Hawaii and Picasso Trigger is a limited liability company whose members are residents of the State of Hawaii.

15.     This Court has original subject matter jurisdiction pursuant to the pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836(b)(1), and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act and the DTSA.

16.     In the alternative, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Liberty and Defendants, citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs of suit.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL ALLEGATIONS

### The Liberty Franchise System

18.     Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of Hawaii.

19.     Liberty owns federally registered Liberty Tax Service® trademarks, service marks, logos, and derivations thereof (the "Marks"), including U.S. Registration Nos. 2314991, 2467670, 2479692, 3167134, and 5509978, as well as the Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks.

20.     Liberty grants licenses to franchisees to use the Marks and participate in its confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Liberty's valuable confidential information, reputation, goodwill, and other legitimate business interests.

21.     Liberty discloses certain confidential information, including methods of operation of franchises, customer information, and marketing information ("Confidential Information"), to franchisees through its Operations Manuals, training manuals, training programs, and in providing guidance and assistance to its franchisees pursuant to a franchise agreement.

22.     Liberty requires that its franchisees agree that, upon expiration, termination, or nonrenewal of a franchise agreement, they will never use, disclose, or permit the use or disclosure of its Confidential Information in any manner whatsoever.

6

23.     Liberty requires that, upon termination, expiration, or nonrenewal of a franchise agreement, the former franchisee will stop using all literature and forms received, return all customer information, and return all copies of its Operations Manual and any updates thereto.

24.     As a result of these efforts and expenditures, the Liberty Marks have become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Liberty's approved sales, operating methods, and procedures.

25.     Liberty has grown from five offices in 1998 to over 3,500 offices today, and is now one of the largest tax preparation franchises in the United States.

26.     Liberty plays an important role in the local economies in which each of its franchisees operate (including Hawaii), with a network of over 12,000 tax preparers.

27.     Liberty's busiest time of year is January to March, when the majority of tax returns are prepared.

**The Franchise Agreements and Related Agreements**

28.     On or about April 18, 2014, Owen D'Souza and Norma D'Souza entered into a Franchise Agreement with Liberty for the HI021 (LAhainaHI-1) Franchise Location (the "HI021 Franchise Agreement"), which provided rights and obligations related to the HI021 (LAhainaHI-1) Franchise Location (the "HI02

Franchise Location"). A copy of the HI021 Franchise Agreement is attached hereto, and made a part hereof, as Exhibit A.

29.     On or about July 7, 2011, Owen D'Souza and Norma D'Souza entered into a Franchise Agreement with Liberty for the HI028 (KiheiHI-1) Franchise Location (the "Franchise Agreement"), which provided rights and obligations related to the HI028 (LAhainaHI-1) Franchise Location (the "HI028 Franchise Location"). A copy of the HI028 Franchise Agreement is attached hereto, and made a part hereof, as Exhibit B.

30.     The HI021 Franchise Agreement and the HI028 Franchise Agreement are collectively referred to as "the Franchise Agreements."

31.     The HI021 Franchise Location and the HI028 Franchise Location are collectively referred to as "the Franchise Locations."

32.     The Franchise Agreements were amended on or about December 18, 2014, changing the entity from joint tenancy to limited liability company. A copy of the Assignment and Amendment to Franchise Agreements (the "Entity Amendment") is attached hereto, and made a part hereof, as Exhibit C.

33.     Owen D'Souza and Norma D'Souza each signed the Entity Amendment, individually, as "Former Franchisee[s]" and each signed the Entity Amendment, individually, and as Member of Picasso Trigger Company as "Amended Franchisee[s]."

8

34.     On July 11, 2016, Picasso Trigger elected to non-renew the HI028 Franchise Agreement but agreed to continue to operate under the HI021 Agreement. A copy of the Non-Renewal of Liberty Tax Service Franchise Agreement for HI028 is attached hereto, and made a part hereof, as Exhibit D.

35.     Pursuant to the Franchise Agreements, Liberty provided Defendants with training in franchise operation, marketing, advertising, sales, and business systems.

36.     Defendants also received a copy of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's respective business systems.

37.     In exchange for Liberty's grant of franchises allowing Defendants to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory" and specifically at the Franchise Locations, Defendants agreed to certain obligations while operating under the Franchise Agreements and after termination of the Franchise Agreements.

38.     Under Sections 4(d) and 4(f) of the HI021 Franchise Agreement, Defendants agreed to pay Royalties and an Advertising Fee, which are calculated as a percentage of monthly Gross Receipts.

39.     Pursuant to Section 4(g) of the Franchise HI021Agreement, Defendants agreed to pay Liberty the Royalty and Advertising fees by the 5th of each month.

40.    Pursuant to Section 4(h) of the HI021 Franchise Agreement, Defendants agreed to pay interest on amounts due under the Franchise Agreements at a rate of 12% compounded daily on any amounts that are fifteen (15) days past due.

41.    Liberty records as accounts receivable ("A/R") the amounts due from a franchisee under the Franchise Agreements, e.g., Royalties and Advertising Fee.

42.    Pursuant to Section 6(b)(i) of the Franchise Agreements, Defendants were allowed to use Liberty's Marks to hold out their Liberty Tax Service® business to the public and agreed to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

43.    Pursuant to Section 6(g) of the HI021 Franchise Agreement, Defendants were required to use the software that Liberty provides and could not "use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business."

44.    Pursuant to Section 9 of the Franchise Agreements, Defendants agreed that, upon expiration, termination, transfer, or nonrenewal, they would immediately stop identifying itself as a Liberty Tax franchisee, pay all amounts owing to Liberty, deliver all customer lists, return all files containing customer tax returns, files, and records, deliver the Manual and any updates, cancel all fictitious name listing that

use the Liberty Marks, and adhere to all applicable contract provisions, including the post-term covenants not to compete and not to solicit.

45. Pursuant to Section 10(a) of the HI021 Franchise Agreement, Defendants agreed to an in-term covenant not to compete, which provides that, during the term of the Franchise Agreements, it would "not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in [their] capacity as a … Liberty Tax franchisee pursuant to a valid … Liberty franchise agreement."

46. Pursuant to Section 10(b) of the Franchise Agreements, Defendants agreed to a post-termination covenant not to compete ("Non-Compete") for "period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business," agreeing "not to directly or indirectly, for a fee or charge," prepare or electronically file income tax returns or offer Financial Products within the Territory or within twenty-five miles of the boundaries of the Territory.

47. Pursuant to Section 10(d) of the Franchise Agreements, Defendants agreed that, for a period of two (2) years following termination, expiration, transfer, or other disposition of the Franchised Business or their removal as signators, they would not within the Territory or twenty-five miles of the boundaries of the Territory, directly solicit any person or entity served by any of their prior Liberty

offices for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products.

48.     Pursuant to Section 10(e) of the HI021 Franchise Agreement, Defendants agreed that, during the term of the Agreements, they "will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office."

49.     Pursuant to Section 10(e) of the HI021 Agreement, Defendants further agreed to "use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise" and to "use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located."

50.     Pursuant to Section 10(h) of the Franchise Agreements, Defendants agreed that the provisions of Section 10 are "reasonable, valid and not contrary to the public interest."

51.     To that end, Defendants agreed to "waive all defenses to the strict enforcement" of Section 10 and further agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10."

52.   The in-term and post-term non-competition covenants contained in Sections 10(a) and 10(b), the covenant not to solicit in Section 10(d), and the covenant not to lease in Section 10(e) of the Franchise Agreements are necessary to protect Liberty's legitimate, protectable interest in its respective franchise businesses, including but not limited to:

a.   Maintaining and protecting Liberty's goodwill and customer loyalty;

b.   Retaining customer relationships;

c.   Liberty's customer list, customer identification, tax returns, and other Confidential Information; and

d.   Preserving Liberty's ability to facilitate the operation of Liberty franchises at the current Franchise Locations.

53.   Defendants acknowledged, in Section 12 of the HI021 Agreement, that information provided by Liberty regarding, among other things, its respective Marks, methods, techniques, formats, specifications, procedures, information, systems, and customer and marketing information was confidential, and was to be used only in connection with the operation of the Franchised Business.

54.   Pursuant to Section 12(a) of the HI021 Franchise Agreement, Defendants agreed to the following term: "During the term of this Agreement and following the expiration or termination of this Agreement, [they] covenant not to

directly or indirectly communicate, divulge, or use any Confidential Information for [their] personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure."

55.     Pursuant to Section 12(c) of the HI021 Franchise Agreement, Defendants agreed that they would (a) not use the Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (b) maintain absolute confidentiality of the Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of Confidential Information; and (d) adopt or implement all reasonable procedures, including, but not limited to, restrictions on disclosure to [their] employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

56.     Pursuant to the HI021 Franchise Agreement, Liberty was entitled to first refusal of any transaction involving the Franchises and a third-party under Section 15(b), to wit: "If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, you shall grant Liberty the option ('Right of First Refusal') to purchase such Franchise or interest as hereinafter provided."

14

57.     Section 17(a) of the HI021 Franchise Agreement and Section 15(a) of the HI028 Franchise Agreement provide that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto."

58.     Section 26 of the HI021 Franchise Agreement and Section 21 of the HI028 Franchise Agreement contain a personal guaranty whereby Defendants agreed to abide by the terms therein, including making all payments specified in the Franchise Agreements.

**The Promissory Note**

59.     Picasso Trigger entered into a Promissory Note - Sole Proprietorship or Partnership (the "Note") on April 18, 2014 in favor of Liberty that is past due and owing.  A copy of the Note is attached hereto, and made a part hereof, as Exhibit E.

60.     The Note amount is $32,000.00 together with interest at the rate of 12% per annum, payable in three interest only payments beginning on February 28, 2015, with the principal amount of $32,000 plus all remaining interest due February 28, 2018.

61.     The Note provides that Liberty will deduct monies owed to Liberty to apply to upcoming amounts due to Liberty and remit the balance of fees received under Liberty's Automatic Payment Transfer program.

62.     The Note provides that the Maker shall "pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of this Note."

63.     The Note sets forth events that constitute default, including "(a) any default in the payment of any installment or payment of principal, interest, or other amounts due and payable under this Note;…(c) any default by Obligor in the performance of, or compliance with, any provision in this Note or other agreement, document or instrument to which any Obligor and Liberty are parties...."

64.     The Note provides that, "If an event of default shall occur or if the undersigned shall fail to pay this Note in full at maturity, the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable, at the option of Liberty, without notice or demand to any Obligor."

65.     The Note contains choice of law provision which states that it "shall be construed in all respects and enforced according to the laws of the Commonwealth of Virginia."

**The Guaranty Agreement**

66.     Defendants agreed, in the Entity Amendment, to "enter into a separate Guaranty Agreement whereby all accounts and notes receivable balances owed by Franchisee shall be guaranteed."

67.     On or about December 18, 2014, Owen D'Souza and Norma D. Souza, as Members of Picasso Trigger Company, entered into an Accounts and Notes Receivable Guaranty Agreement with Liberty (the "Guaranty Agreement"), whereby Defendants as Amended Franchisees agreed to be the Guarantor of obligations or amounts due and owing to Liberty prior to or after the date of the Guaranty Agreement.  A copy of the Guaranty Agreement is attached hereto, and made a part hereof, as Exhibit F.

68.     The Guaranty Agreement provides that, "through Former Franchisee's acquisition, ownership and operation of the [Liberty] franchise territory, Former Franchisee has accrued certain amounts owing to [Liberty] and Guarantor may accrue further certain amounts owing to [Liberty] (hereinafter collectively 'Accounts and Notes Receivable Balance')."

69.     The Guaranty Agreement further provides that "Guarantor has agreed that any obligations or amounts due or owing, whether prior to or after the date of this Agreement as related to the operation of any [Liberty] franchise territories currently owned or to be acquired in the future shall be guaranteed by Guarantor and as such considered due and owing by Guarantor."

70.     Defendants agreed that, "whether said debts accrue prior to this Agreement or after this Agreement, the Guarantor hereby unconditionally,

absolutely and irrevocably guarantees the Accounts and notes Receivable Balances, past and future."

71.     The Guaranty Agreement provides that, "[u]pon default, guarantor hereby agrees to assume all obligations and responsibilities for repayment to [Liberty] under this Agreement and any and all accounts and notes receivable balances owed to [Liberty].  [Liberty] shall not be obliged to seek recourse prior to enforcing the rights under this Guaranty.  The Guarantor agrees to remain fully bound until all monies due to [Liberty] pursuant to the Accounts and Notes Receivable Balance have been paid in full and waives all rights of subrogation and set-off.   Guarantor further waives all defenses based on suretyship."

**<u>Unfair Competition and Breach of In-Term and Post-Term Non-Competition Covenants</u>**

72.     The street address for the HI02 (LAhainaHI-1) Franchise Location is 270 Lahainaluna Road, Lahaina, HI 96761 ("Office 16450"), and the telephone number is (808) 662-3829.

73.     The street address for the HI028 (KiheiHI-1) Franchise Location is 1367 S. Kihei Road, Kihei, HI  96753 ("Office 16936") and the telephone number is (808) 874-4829.

74.     Upon information and belief, Defendants diverted business and continue to divert business from Liberty, working from Office 16450 and/or from 2911 Kailiili Road, Haiku, HI  96708, providing tax preparation services using non-

Liberty software and an Electronic Filing Identification Number ("EFIN") from the Internal Revenue Service ("IRS") that is not affiliated with Liberty.

75. All commercial tax return businesses are required to have an EFIN issued by the IRS for each business location they own and operate.

76. An EFIN allows the IRS to monitor, track, and regulate who is electronically filing tax returns.

77. Upon information and belief, even though Defendants were contractually obligated not to operate a competing tax preparation business anywhere in the United States or Canada or to use non-Liberty tax preparation software, Defendants have been operating an income tax preparation business since at least 2017, directly competing with Liberty, at the HI021 Franchise Location and elsewhere in Maui County, preparing and submitting tax returns to the IRS via an EFIN unaffiliated with Liberty, using alternative software, in violation of the Franchise Agreements.

78. Liberty identified an additional EFIN being used by Picasso Trigger to transmit returns outside of Liberty systems while at the same time Defendants were operating and being subject to the obligations of the Franchise Agreements, diverting customers from the Liberty Franchise who come in through use of Liberty advertising, training and goodwill and sharing customer lists of prior customers.

79.   Picasso Trigger maintains a website for its full service tax preparation business, https://picassotriggercompany.net.

80.   The Tax Preparation page, picassotriggercompany.net/tax_preparation, advertises full service tax preparation and other tax services:

> We offer full service tax preparation for personal and business clients. When it comes to tax preparation, we focus on accuracy and integrity. We start with a detailed interview and ensure that your return is based on facts and documentation. When complete, we schedule a wrap up appointment with you to review your tax return(s) completely. Our pricing is straightforward and reasonable. High prices, gimmicks, hidden fees, extra service charges, etc, that's not us.

81.   The Contact Us page, https://picassotriggercompany.net/contact_us, lists a West Maui Office at 270 Lahainaluna Road, Lahaina, HI  96761, and an Upcountry Office at 2911 Kailiili Road, Haiku, HI  96708.

82.   270 Lahainaluna Road is the physical address for Office 16450 whereas 2911 Kailiili Road is the mailing address and the registered agent address for Picasso Trigger according to the Hawaii Department of Commerce and Consumer Affairs website, https://hbe.ehawaii.gov/documents/business.html?fileNumber=91704C5.

83.   Picasso Trigger also has a Facebook page, www.facebook.com/picassotriggercompany.

84.   On October 28, 2015, Picasso Trigger posted the following contact information on its Facebook page:

808-874-4829 South Maui Office
808-662-3829 West Maui Office
808-385-1218 Business Cell

85.     The telephone number listed for the West Maui Office, (808) 385-3829, is the telephone number of Office 16450 (HI021).

86.     The telephone number listed for the South Maui Office, (808) 874-4829, is the telephone number of Office 16936 (HI028).

87.     Even though the Franchise Agreements were in place when this contact information was posted, no mention of Liberty is made on the Picasso Trigger Facebook page.

88.     According to the 2019 IRS External Customer Data Store (ECDS) Extracts, formerly known as Third Party Data Store (TPDS) Extracts, https://www.irs.gov/privacy-disclosure/external-customer-data-store-ecds-extracts, Picasso Trigger is an authorized E-File Provider at both 2911 Kailiili Road, Building C, Haiku, HI 96709, and 270 Lahainaluna Road, Unit C, Lahaina, HI 96761.

89.     Picasso Trigger originally obtained the EFIN (2102276) for 2911 Kailiili Road in 2011, applying again in 2019, and originally obtained the EFIN (2333617) for 270 Lahainaluna Road in 2014.

90.     In 2017, Defendants submitted 159 tax returns to the IRS using the non-Liberty EFIN and preparing the returns outside of Liberty systems.

91.    In 2018, Defendants submitted 193 tax returns to the IRS using the non-Liberty EFIN and preparing the returns outside of Liberty systems.

92.    In 2018, Defendants submitted 234 tax returns to the IRS using non-Liberty EFIN and preparing the returns outside of Liberty systems.

93.    Defendants' use of non-Liberty software and operation of the competing tax preparation business is in direct violation of Section 10(a) of the Franchise Agreement which provides that Defendants were not to compete directly or indirectly for a fee or charge in the United States of Canada, prepare or electronically file income tax returns, or offer financial products except in their capacity as a Liberty Franchisee.

94.    Defendants' diversion of business away from the Liberty franchise to their competing business at the Former Franchise Location is in direct violation of Section 12 of the Franchise Agreement as Liberty's Marks, methods, techniques, specifications, procedures, information, systems, and customer/marketing information was confidential and only to be used in connection with the operation of Liberty franchises.

95.    Defendants also are in violation of Sections 12(a) and 12(c) of the HI021 Franchise Agreement in that Defendants diverted business away from the Liberty Franchise, thereby interfering with Liberty's business relationships and

advantages of Liberty through use of its Marks, and from using, for their benefit, confidential information from Liberty's proprietary manuals and business system.

96.    As a result of this diversion of customers and violation of the in-term non-compete, Picasso Trigger underreported revenue to Liberty.

97.    Picasso Trigger also owes Liberty $155,274.08 in fees and royalties, including underreported income, for which demand has been made but which has not been paid.

98.    Picasso Trigger owes $54,827.87 on the Note, for which demand has been made but which has not been paid.

99.    Liberty provided Picasso Trigger with Notice to Cure Default/Violation of Your In-Term Covenant Not to Compete on July 29, 2019. A copy of the Notice to Cure Default is attached hereto, and made a part hereof, as Exhibit G.

100.   Liberty provided Picasso Trigger with Notice to Cure Default/Notice of Acceleration and Demand for Payment, on August 26, 2019. A copy of the Notice to Cure Default is attached hereto, and made a part hereof, as Exhibit H.

101.   Liberty terminated the Franchise Agreement on September 5, 2019 for failure to use the software Liberty provided and underreporting of revenue. A copy of the Termination of Franchise Agreement is attached hereto, and made part hereof, as Exhibit I.

102.   Even though the Franchise Agreements have been terminated, Defendants are not in compliance with their post-termination obligations, including but not limited to:

    a.    Paying all monies owing;

    b.    Transferring all telephone numbers used in relation to the Franchised Business;

    c.    Delivering all paper and electronic copies of customer lists, tax returns, files, and records;

    d.    Returning the Operations Manuals and updates loaned by Liberty;

    e.    Assigning any interest in any lease, sublease, or other agreement related to the Franchised Business;

    f.    Providing any and all equipment, signs, trade fixtures, and furnishings used in the Franchised Business; and

    g.    Adhering to the post-termination covenants not to compete and not to solicit.

103.   Defendants continue to occupy the 19360 Office Location and to provide competing income tax preparation services from that location.

104.   Defendants continue to use the telephone numbers for the 19360 Office Location and the 16936 Office Location to provide competing income tax preparation services.

105.   Upon information and belief, Defendants continue to compete with Liberty and to solicit Liberty customers, at the former Franchise Location and within twenty-five miles thereof, in violation of post-term covenants Defendants agreed to, which foreclose solicitation and competition within a twenty-five mile radius of the Franchise Location for a period of two years after termination.

106.   Indeed, the home page of the Picasso Trigger website, picassotriggercompany.net, announced, in bright yellow letters, the following prior to the beginning of tax season:

**\*\*\*IRS TAX Season Opens 01/27/2020 \*\*\***

107.   Defendants owe Liberty $209,671.98 in fees and royalties and monies due under the Note, which is due and owning and has not been paid.

## CAUSES OF ACTION

### COUNT I
### Breach of the Franchise Agreements
### (Equitable Claim)
### Plaintiff v. Defendants

108.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

109.   The Franchise Agreements are valid and enforceable.

110.   Liberty has performed every obligation and condition required of it under the Franchise Agreements.

111.   Pursuant to Section 6(b)(i) of the Franchise Agreements, Defendants agreed to only use Liberty's Marks to gain business for Liberty and not to divert business to another company.

112.   Pursuant to Section 6(g) of the Franchise Agreements, Defendants agreed that all Franchised Business computers would only use Liberty's software for preparing and electronically filing tax returns.

113.   Defendants, however, transmitted at least 586 tax returns using non-Liberty software between 2017 and 2019.

114.   Pursuant to Section 10(a) of the Franchise Agreements, Picasso Trigger agreed to the in-term non-competition and post-term non-competition covenants.

115.   Defendants have competed in the past and are currently competing with Liberty by preparing and electronically filing income tax returns unaffiliated with Liberty at the HI021 Franchise Location and within twenty-five miles thereof, in violation of Section 10(a) of the Franchise Agreements.

116.   Defendants agreed not to disclose or use Liberty's Confidential Information except as authorized in Section 12 of the HI021 Franchise Agreement.

117.   Upon information and belief, Defendants, individually and in combination, committed the following acts and omissions, in violation of Section 12 of the Franchise Agreement:

a.   Disclosing Liberty's Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including employees of Picasso Trigger not working at the Liberty Franchise Locations, without the consent or authorization of Liberty; and

b.   Using Liberty's Confidential Information for purposes other than the operation of the Franchised Business, including for the purpose of operating Picasso Trigger to compete with the Franchised Business and Liberty.

118.   The aforementioned acts are material breaches of the Franchise Agreements.

119.   As a direct and proximate result of these breaches, Liberty has incurred, and will continue to incur, substantial losses, fees, and expenses for which Defendants are liable.

120.   As a result of Defendants' past, present, and potential breaches, Liberty has suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to:

a.      Loss of customer goodwill and loyalty;

b.      Loss of business opportunities and relationships to provide tax preparation services and related services;

c.      Loss of customers;

d.      Loss of profits;

e.      Loss of franchisee stability;

f.      Loss of ability to sell other franchises;

g.      Loss of value in confidential business information;

h.      Loss of competitive advantage in the HI02 Territory;

i.      Attorneys' fees; and

j.      Cost of this action.

121.   Liberty has been and will be irreparably harmed by Defendants' actions, and monetary damages are an insufficient remedy in that they can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's Confidential Information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Defendants' ongoing violations.

122.   Unless their wrongful conduct is enjoined, Defendants will continue to breach their obligations by continuing to breach the non-competition covenants, to

divert business to their competing tax preparation service, and continuing to disclose and use Liberty's Confidential Information.

## COUNT II
### Breach of the Franchise Agreements
### (Monetary Claim)
### Plaintiff v. Defendants

123.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

124.   The Franchise Agreements are valid and enforceable.

125.   Liberty has performed every obligation and condition required of it under the Franchise Agreements.

126.   Picasso Trigger used non-Liberty software to file income tax returns, in breach of the Franchise Agreements, resulting in underpayment of royalties and fees and other monetary damages in an amount to be determined at trial.

127.   As a direct and proximate result of Picasso Trigger's breach of the Franchise Agreements, Liberty has incurred, and will continue to incur substantial losses, fees, and expenses for which Picasso Trigger is liable.

## COUNT III
### Breach of the Franchise Agreement
### (Accounts Receivable & Promissory Note)
### Plaintiff v. Defendants

128.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

129.   Defendants were obligated to make payments to Liberty for royalty and advertising fees in the amount of 14% and 5% of gross receipts respectively.

130.   Defendants are indebted to Liberty in the sum of $155,274.08 upon accounts stated between them, for royalty and advertising fees, including underreported income, pursuant to the Franchise Agreements.

131.   Defendants also are indebted to Liberty on the Promissory Note as set forth below.

132.   On April 18, 2014, Defendants executed a Note in favor of Liberty, which evidenced a loan in the principal amount of $32,000.00.

133.   The Note provides that interest shall accrue on the unpaid balance at a rate of 12% per annum.

134.   The total amount of the Notes due and owing (but, notably, still accruing) to Liberty is $54,827.87 as of September 5, 2019.

135.   Defendants promised to pay said amount upon demand.

136.   Liberty demanded payment of the amounts due, which has not been made.

**COUNT IV**
**Accounts Receivable Note Guaranty**
**Plaintiff v. Defendants**

137.   Liberty repeats the allegations set forth in the preceding Sections as if set forth at length herein.

30

138.    On December 18, 2014, Defendants entered into an Accounts and Notes Receivable Guaranty Agreement guaranteeing any obligations or amounts due owing, whether accrued prior to the date of the Agreement or after the Agreement.

139.    Defendants, as guarantor, owe Liberty $209,671.98 in fees, royalties, and separate Accounts Receivable, in addition to any other fees and royalties owed pursuant to the Franchise Agreements and other agreements between the parties.

140.    Defendants promised to pay said amount upon demand.

141.    Liberty demanded payment of the amount due but payment has not been made.

## COUNT V
### Breach of the Franchise Agreement § 10(a)
### (Monetary Claim)
### Plaintiff v. Defendants

142.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

143.    The Franchise Agreements are valid and enforceable.

144.    Liberty has performed every obligation and condition required of it under the Franchise Agreements.

145.    Pursuant to Sections 10(a) and 10(b) of the HI021 Franchise Agreement, Picasso Trigger agreed to the in-term and post-term non-competition covenants.

146.   Picasso Trigger, of which Owen D'Souza and Norma D'Souza are Members, has been and are currently competing with Liberty, previously using the Liberty Marks to solicit customers into the HI021 Franchise Location and then preparing and electronically filing income tax returns through their competing tax preparation business, using an EFIN unaffiliated with Liberty and also using Liberty's Confidential Information and customer lists to benefit Defendants' competing business.

147.   Defendants' actions constitute material breaches of the Franchise Agreements.

148.   As a direct and proximate result Defendants' breaches of Section 10(a) of the Franchise Agreements, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which Defendants are liable, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Defendants' profits.

149.   Defendants intentionally and maliciously violated the in-term and post-term non-competition covenants.

150.   Defendants lured customers into the Franchise Locations by using the Liberty Marks and then used non-Liberty software as a means to hide revenue from Liberty to evade making contractually-agreed royalty payments.

151.    Because Defendants intentionally and maliciously violated the in-term non-competition covenants of the Franchise Agreements, Liberty is entitled to punitive damages.

## COUNT VI
## Federal Trademark Infringement
## Plaintiff v. Defendants

152.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

153.    Upon information and belief, Defendants displayed the Marks on signage, advertisements, and promotions, including at the HI021 Franchise Location, to solicit customers for their competing income tax preparation services.

154.    Defendants' conduct is infringing on the trademark rights owned by Liberty, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

155.    Through their unauthorized display of the Marks, Defendants profited and Liberty has been damaged.

156.    The acts by Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

157.    As a result, Liberty has incurred and continues to incur monetary damage in an amount to be determined at trial.

## COUNT VII
## False Designation and Misrepresentation of Origin
## Plaintiff v. Defendants

158.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

159.   The unlawful conduct by Defendants set forth herein constitutes false designation of origin and misrepresentation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

160.   By reason of the foregoing, Liberty has suffered damages to the value of the Marks and to customer goodwill.

161.   The acts by Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

162.   As a result, Liberty has incurred and continues to incur monetary damage in an amount to be determined at trial.

## COUNT VIII
## Federal Trademark Dilution
## Plaintiff v. Defendants

163.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

164.   The Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

165.   The actions and conduct by Defendants, as set forth above, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

166.   Pursuant to 15 U.S.C. § 1117, Liberty is entitled to recover damages from Defendants caused by unlawful use of the Marks.

## COUNT IX
## Defend Trade Secrets Act
## Plaintiff v. Defendants

167.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

168.   Liberty incorporates all previous paragraphs as though fully set forth herein verbatim.

169.   The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

170.   Liberty owns numerous trade secrets, including but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists, related to products and services used in interstate commerce.

171.   Each of Liberty's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through

35

proper means by, another person who can obtain economic value from the disclosure or use of the information.

172.   Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

173.   During the operation of the Franchised Business, Liberty's trade secrets were disclosed to Defendants for the sole purpose of operating the Franchised Business pursuant to the Franchise Agreements.

174.   Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining its competitive advantage in the marketplace.

175.   The Franchise Agreements explicitly provide for the protection of such trade secrets, including requiring the delivery of all originals and copies of such information to Liberty upon expiration, termination, or nonrenewal of the Franchise Agreements, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a Franchised Business pursuant to the Franchise Agreements.

176.   Liberty required and Defendants agreed that upon expiration, termination, or nonrenewal of the Franchise Agreements, they would never use,

disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever.

177.   Without authority or consent from Liberty, Defendants used the business know-how, customer lists, and customer contact information that they obtained while operating the former Franchised Business to obtain business for themselves, thereby misappropriating Liberty's trade secrets.

178.   Upon information and belief, Defendants used and are utilizing Liberty's confidential system and materials after the expiration of the Franchise Agreements and Liberty has not and would not consent to or authorize such use.

179.   Defendants intentionally and without Liberty's permission or authorization misappropriated and/or disclosed Liberty's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Defendants.

180.   As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

181.   Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use of Liberty's trade secrets.

182.   Defendants' conduct in misappropriating Liberty's trade secrets was and continues to be willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## COUNT X
### Unjust Enrichment/Restitution
### Plaintiff vs. Defendants

183.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

184.   Defendants have knowingly and intentionally misappropriated Confidential Information in furtherance of their operation of Picasso Trigger separate from their Liberty-Franchised-Business.

185.   Defendants have used and continue to use the former HI-021 Franchise Location in order to confuse, mislead and/or deceive others that Picasso Trigger's tax preparation business services are being done by a Liberty franchise.

186.   In equity and fairness, Defendants are liable to Liberty for any amounts collected from the improper and illegal use of Liberty's Confidential Information.

187.   Defendants are a party to the Franchise Agreements and Defendants are aware of the Franchise Agreement's existence and its contents such that Defendants know that Liberty expects to be compensated and that Defendants should compensate Liberty for use of Liberty's Marks, Confidential Information, and goodwill as set forth in Liberty's Franchise Agreements.

188.   Defendants knowingly retain these benefits, to which they are not rightfully entitled, at the expense and to the damage of Liberty.

189.   As a direct and proximate result of Defendants' actions, Liberty has suffered and continues to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

**COUNT XI**
**Request for Preliminary Injunction**
**Plaintiff vs. Defendants**

190.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

191.   Liberty's application for injunctive relief is authorized by Fed. R. Civ. P. 65.

192.   Pursuant to Section 10(h) of the Franchise Agreements, Picasso Trigger acknowledged and agreed that Liberty is entitled to a temporary restraining order, temporary and/or permanent injunction for breach of any of the in-term obligations of the Franchise Agreements.

193.   By providing competing tax preparation services to solicit business for Picasso Trigger, and disclosing and using Liberty's Confidential Information, Defendants are engaging and will continue to engage in tax preparation services that are in clear violation of the express terms of the Franchise Agreements.

194.   As a result of Defendants' unauthorized and unlawful acts, Liberty has been irreparably harmed and will continue to suffer irreparable harm.

195.   For the foregoing reasons, Liberty respectfully request that the Court grant the following injunctive relief:

a.   Enjoin Defendants from breaching their non-competition covenants;

b.   Enjoin Defendants from using any of Liberty's Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for Picasso Trigger or any other individual or company that is not the Franchised Business;

c.   Enjoin Defendants from using any of Liberty's Confidential Information;

d.   Enjoin Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the Franchise Location for a period of two years; and

40

e.     Enjoin Defendants from using non-Liberty software to prepare and electronically file tax returns.

196.   Liberty has a high likelihood of success on the merits on their claims, and it is probable that they will recover from Defendants, as Defendants are openly and actively, materially breaching the express terms of the valid and enforceable Franchise Agreements, and are in possession of and using Liberty's Confidential Information.

197.   Irreparable harm will result if a preliminary injunction is not issued because Defendants will continue to materially breach the express terms of the valid enforceable Franchise Agreements, which will cause irreparable and irreversible harm to the goodwill and reputation that Liberty has spent significant time and money establishing.

198.   Liberty has no adequate remedy at law because Defendants refuse to cease their material breaches of express terms in the Franchise Agreements.

199.   Defendants waived any requirement that Liberty post bond in Section 10(h) of the Franchise Agreements.

200.   The injury to Liberty outweighs any injury that would be sustained by Defendants collectively, and each of them, as a result of the requested injunctive relief.

201.   Injunctive relief will not adversely affect the public interest.

41

202.   Defendants have been or are being served with notice of this application for injunctive relief.

## COUNT XII
### Request for Permanent Injunction
### Plaintiff v. Defendants

203.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

204.   After a trial on the merits or a final judgment, Liberty asks the Court to convert any preliminary injunction as specified above into a permanent injunction.

205.   Liberty has joined all indispensable parties pursuant to Fed. R. Civ. 19.

## PRAYER FOR RELIEF

WHEREFORE, Liberty requests of the Court the following relief:

a.   That the Court issue a preliminary injunction and a permanent injunction:

i.   Enjoining Picasso Trigger and its Members from breaching their non-competition covenants;

ii.   Enjoining Defendants from using any of Liberty's Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for Picasso Trigger or any other individual or company that is not the Franchised Business;

iii.     Enjoining Defendants from using any of Liberty's Confidential Information;

iv.     Enjoining Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who is a customer of the Franchise Location until two years after termination of the Franchise Agreement; and

v.     Enjoining Defendants from using non-Liberty software to prepare and electronically file tax returns.

b.     For an accounting of Defendant's revenues and profits for all tax return preparation and electronic filing performed since 2014.

c.     For a monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and disgorgement of profits;

d.     For a monetary award against Defendants for Liberty's attorney's fees and costs, in an amount to be proven at trial;

e.     For pre- and post-judgment interest; and

f.     For such other relief as the Court shall deem just and proper.

Dated:      Honolulu, Hawaii, February 24, 2020.

GORDON REES SCULLY MANSUKHANI, LLP


By:  /s/ Mia D. Obciana           
MIA D. OBCIANA
PETER G. SIACHOS
(To be Admitted *Pro Hac Vice*)

Attorneys for Plaintiff JTH Tax LLC
d/b/a LIBERTY TAX SERVICE